UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CIRCLE C ENTERPRISES, INC.** | |
| | **CIVIL ACTION** |
| **VERSUS** | |
| | **NO. 21-253-JWD-RLB** |
| **ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC.** | |

**RULING AND ORDER**

This matter comes before the Court on the *Motion for Summary Judgment* (the "*Motion*") (Doc. 9) filed by Defendant Associated Industries Insurance Company, Inc. ("AIIC" or "Defendant"). Plaintiff Circle C Enterprises, Inc. ("Circle C" or "Plaintiff") opposes the *Motion*. (Doc. 15.) Defendant has filed a reply. (Doc. 16.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendant's *Motion* is granted.

**I.     Background**

**A.  Relevant Facts**

This case arises out of a contract between Plaintiff and Axiall, LLC ("Axiall") for work in connection with the demolition of a decommissioned methanol plant in Plaquemine, Louisiana. (*See* Plaintiff's *Statement of Uncontested Material Facts and Response to Defendant's Statement of Facts* ("*Pl. OSUF*" ¶ 13, Doc. 15-1).)[1] Plaintiff and Axiall entered into a construction services agreement ("the Agreement") in October 2015, and Plaintiff began work shortly thereafter. (*Id.*) However, sometime during the course of the project, Plaintiff "discovered asbestos tainted

---

[1] Plaintiff set forth additional facts it identified as undisputed. (*See Pl. OSUF*, ¶¶ 13–21, Doc. 15-1.) Defendant did not submit a separate statement of material facts with its reply as required by Local Rule 56(d), and only disputed one of these facts (discussed more below) in its reply brief. Thus, when the *Pl. OSUF* is cited by paragraph number to support a particular fact, that fact is deemed admitted under Local Rule 56(f).

materials and[,] pursuant to a change order agreed to by Axiall, retained the services of a remediation contractor for the purposes of safely removing and disposing of the asbestos contaminated materials." (*Id.* ¶ 14.) Before the demolition project was completed, in August 2016, Plaintiff demobilized from the work site and ceased working. (*Id.* ¶ 15.) Thereafter, Plaintiff filed suit in state court against Axiall, "asserting claims for amounts due pursuant to the terms of the applicable contract." (*Id.* ¶ 16.)

In response, Axiall filed an answer and a Reconventional Demand. (*AIIC's Statement of Material Facts* ("*Def. SMF*" ¶ 1, Doc. 9-2).)[2] Axiall alleged therein that Plaintiff failed to complete the work under the Agreement, failed to pay the agreed-to sum of $180,000 as set forth in the Agreement and the bid, left portions of the plant in an unstable and unsafe condition, and stripped high value materials from the plant. (*Id.* ¶¶ 4–5; *see also* Doc. 9-3 at 9-11, ¶¶ 61, 64, 71, 73.) Axiall's Reconventional Demand seeks damages for, among other things, the unpaid contract price, the cost to complete the project, costs to stabilize equipment, and costs to clean up hazards. (*Id.* ¶ 6.)

As to whether Plaintiff abandoned the project on its own volition, the parties provide conflicting evidence. Defendant states Plaintiff abandoned the project, citing Axiall's Reconventional Demand, wherein Axiall alleges that Plaintiff "announced it would be leaving Axiall's facility without completing the work agreed to in the Construction Services Agreement in August 2016." (Axiall Reconventional Demand, Def. Ex. A, Doc. 9-3 at 10.) Conversely, Plaintiff cites to its own petition, the operative complaint in this suit, wherein Plaintiff alleges the following: "On August 23, 2016, Circle C received correspondence from counsel for Axiall, notifying Circle C that its Agreement was terminated." (Doc. 1-1, ¶ 7.) According to the petition, Plaintiff was still

---

[2] When the *Def. SMF* is cited by paragraph number to support a particular fact, that fact is undisputed. *See* M.D. La. LR 56(c), (g).

"in the course of performing demolition work" when it received this "notice of termination," and Plaintiff demobilized from the work site "[a]t the direction of Axiall." (*Id.* ¶ 8.)

For the period relevant to this suit, Defendant provided commercial general liability insurance to Plaintiff. (*See* Certified Copy of AIIC Policy No. AES1028514 01 ("AIIC Policy"), Def. Ex. B, Doc. 9–4.) In 2019, because of the Reconventional Demand made by Axiall, Plaintiff requested indemnity and defense under the terms of the policy from Defendant. (*Pl. OSUF* ¶ 19, Doc. 15-1.) Subsequently, a coverage determination was issued from AIIC denying Plaintiff's request for defense and coverage. (*Id.* ¶ 20.)

### B. Parties' Arguments

Defendant seeks summary judgment, asserting that—as Plaintiff's general liability insurer—it properly denied coverage for the claims asserted against Plaintiff by Axiall. (Doc. 9 at 1.) According to Defendant, to determine whether a liability insurer has a duty to defend its insured, there must be a "possibility of liability under the policy" that is discernible by application of the "eight corners" test—that is, by "comparing the factual allegations of the pleadings to the terms of the policy." (Doc. 9-1 at 4 (citations and quotations omitted).) Defendant argues that the claims made by Axiall against Plaintiff fail to allege any "property damage" or "occurrence" as those terms are defined in the policy, both of which are required for coverage. (*Id.* at 5–6.)

In the alternative, even if "property damage" within the meaning of the policy was properly alleged, Defendant avers that it nevertheless is entitled to judgment as the insurance policy's "work product" exclusion bars coverage here. (*Id.* at 6.) Specifically, Defendant argues that any alleged damage to property here involved Plaintiff's own "work product" (that is, "property on which the insured was hired to work"); as a result, that damage falls under the relevant exclusion. (*Id.*; *see also* AIIC Policy, Def. Ex. B, Doc. 9-4 at 20.) Finally, Defendant asserts that Plaintiff cannot be

3

awarded statutory penalties here because "for a claim of statutory bad faith to survive, it must be based on a valid underlying claim." (Doc. 9-1 at 7 (citation and internal quotation marks omitted).) For the reasons outlined above, Defendant maintains that there is no valid underlying claim here and, consequently, also no claim for statutory penalties. To conclude, Defendant's position is that its duties to defend, indemnify, and provide coverage as an insurer are not triggered by the claims made against Plaintiff.

In opposition to the *Motion*, Plaintiff first agrees that the "eight-corners rule" is used to determine whether Defendant has a duty to defend, (Doc. 15 at 7 (citations omitted)), emphasizing that "the factual allegations of the underlying petition must be liberally interpreted" under this rule (*id.* at 8 (quoting *Mossy Motors Inc. v. Cameras Am.*, 898 So. 2d 602, 606 (La. Ct. App. 2005)). Next, Plaintiff maintains that an "occurrence" under the policy was alleged because the Reconventional Demand shows "there is a possibility that an accident occurred sufficient to trigger AIIC's obligation to provide a defense to Circle C." (*Id.* at 12; *see also id.* at 10–11 (relying on several Louisiana cases and their interpretations of the terms "occurrence" and "accident").) For reasons discussed further below, Plaintiff asserts that property damage was also adequately alleged. (*Id.* at 12.) For these reasons, Plaintiff concludes that summary judgment should be denied because genuine issues of material fact remain with respect to AIIC's defense obligations. (*Id.* at 13–14.) As a final note, Plaintiff states that "any ruling on [its] claims for indemnity and bad faith penalties should be deferred until the merits of the underlying claims are determined." (*Id.* at 14 n.4.)

In its reply brief, Defendant first argues that the burden is on Plaintiff as the insured to prove that this incident falls within the policy's terms, (Doc. 16 at 1 (citations omitted)), and Plaintiff has not met this burden as it fails to point to any allegations of fact that could constitute

4

an occurrence or accident (*id.* at 2). Instead, the damages Axiall seeks arise from Plaintiff's alleged abandonment of the project. (*Id.*) Further, even if the Court were to find that the allegations show an "occurrence," Plaintiff still fails to "link such an occurrence" to any "potential covered property damage allegedly sustained by Axiall." (*Id.* at 3.) Finally, Defendant reiterates arguments similar to those previously made with respect to the incident here being excluded from coverage and the unavailability of statutory penalties. (*See id.* at 4–5.)

## II.     Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (internal citations omitted). Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (internal citations omitted).

Also important here, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure [(that is, beyond doubt)] *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986); *peradventure*, Merriam-Webster's Dictionary (2019), https://www.merriam-webster.com/dictionary/peradventure (last visited Aug. 29, 2022). *See also Universal Sav. Ass'n v. McConnell*, 14 F.3d 52 (5th Cir. 1993) (unreported) ("Where the summary judgment movant bears the burden of proof at trial, the summary judgment evidence must affirmatively establish the movant's entitlement to prevail as a matter of law."). That is,

> In contrast, if the movant bears the burden of proof on a claim at trial, then its burden of production is greater. It must lay out the elements of its claim, citing the facts it believes satisfies those elements, and demonstrating why the record is so one-sided as to rule out the prospect of the nonmovant prevailing. If the movant fails to make that initial showing, the court must deny the motion, even if the opposing party has not introduced contradictory evidence in response.

10A Mary Kay Kane, *Federal Practice and Procedure (Wright & Miller)* § 2727.1 (4th ed. 2022).

### III. Applicable Law and Analysis

Because subject matter jurisdiction in this case is based on diversity of citizenship, the Court applies the law of the forum state. When analyzing the meaning and scope of insurance policies in Louisiana, several legal principles are important. As the Louisiana Supreme Court explained:

> An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles. The parties' intent, as reflected by the words of the policy, determine the extent of coverage. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. If the policy

> wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written.
>
> Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured. *However*, the rule of strict construction does not "authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists."

*Ledbetter v. Concord Gen. Corp.*, 95-0809 (La. 1/6/96), 665 So. 2d 1166, 1169, amended, 95-0809 (La. 4/18/96), 671 So. 2d 915 (citations omitted) (emphasis added).

Moreover, "[w]hile the insurer has the burden of proof of showing policy limits or exclusions, it is the insured who bears the burden of proving the existence of the policy and coverage. When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms." *Brewster v. Hunter*, 09-932 (La. App. 5 Cir. 3/9/10), 38 So. 3d 912, 919, writ denied, 2010-0773 (La. 6/4/10), 38 So. 3d 305 (citation omitted).

### A.  Duty to Defend

With respect to a liability insurer's duty to defend its insured, this Court has stated:

> Under Louisiana law, whether the insurer owes a duty to defend is determined by application of the "eight corners rule," which directs the court to examine the four corners of the complaint and the four corners of the insurance policy without resort to extrinsic evidence. *Arch Ins. Co. v. Outreach Cmty. Dev. Corp.*, No. CV 15-721, 2017 WL 8944048, at *5 (M.D. La. Dec. 21, 2017) (deGravelles, J.) (citing *Mossy Motors, Inc. v. Cameras Am.*, 04-0726 (La. App. 4 Cir. 3/2/05), 898 So. 2d 602, 606); *Martco*, 588 F.3d at 872; *Moore v. Home Depot USA, Inc.*, 352 F. Supp. 3d 640, 649 (M.D. La. 2018) (Jackson, J.). If the facts alleged in the complaint could "possibly fall within matters covered under the policy," then the duty to defend is triggered. *Arch Ins.*, 2017 WL 8944048, at *5 (citing *Martco*, 588 F.3d at 872). Although many of the claims alleged may be clearly precluded under an applicable policy exclusion, if the complaint discloses "a single allegation" for which coverage is "not unambiguously excluded," a duty to defend nevertheless exists. *Id.* (citing *Hanover Ins. Co. v. Superior Labor Servs., Inc.*, No. CV 14-1930, 2017 WL 2973079, at *9 (E.D. La. July 12, 2017)).

7

*Endurance Am. Ins. Co. v. ABC Caulking Contractors, Inc.*, No. 20-174, 2021 WL 4097142, at *7 (M.D. La. Sept. 8, 2021) (deGravelles, J.).

In the case at hand, the insurance policy provides the following on the issue of coverage:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "*property damage*" is caused by an "*occurrence*" that takes place in the "coverage territory" . . .

(AIIC Policy, Def. Ex. B, Doc. 9-4 at 17 (emphasis added).)

Again, the burden is on the insured to prove that an incident is covered under the terms of the policy. *Brewster v. Hunter*, 38 So. 3d at 919. Therefore, to defeat the motion for summary judgment here, Plaintiff must show a possibility of coverage. More specifically, Plaintiff must prove that reasonable jurors could find that Axiall's Reconventional Demand reveals "property damage" caused by an "occurrence" as those terms are defined in the policy.

### *1. "Occurrence" Under the Policy*

For purposes of coverage, the policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (AIIC Policy, Def. Ex. B, Doc. 9-4 at 30.) Plaintiff correctly notes that the term "accident" is not defined in the policy, and points out that "Louisiana courts interpret 'occurrence' to include 'an unforeseen and unexpected loss.' " (Doc. 15 at 10 (quoting *North Am. Treatment Sys., Inc. v. Scottsdale Ins. Co.*, 2005-0081 (La. App. 1 Cir. 8/23/06), 943 So. 2d 429, 444, writ denied, 2006-2918 (La. 2/16/07), 949 So. 2d 423, and writ denied, 2006-2803 (La. 2/16/07), 949 So. 2d 424).) Yet, when

8

confronted with policy language identical to that at issue here, several courts have made clear that damages stemming from breach of contractual obligations and intentional conduct are not "accidents" in the sense that the policy contemplates.

For example, in *J. Caldarera & Co., Inc. v. Triumph Constr., L.L.C.*, 21-75 (La. App. 5 Cir. 9/22/21), 330 So. 3d 364, the plaintiff's argument was similar to the one advanced here: that the damage it sustained as a result of breach of contract was an "occurrence" under the insurance policy. *Id.* at 368-69. In that case, the plaintiff and general contractor, Caldarera, entered into a subcontract agreement with Triumph whereby Triumph was obligated to perform certain work in connection with a construction project, including "the furnishing of labor and other services necessary for the construction and installation of concrete foundation and site pavement work." *Id.* at 366. Subsequently, Triumph breached the subcontract by failing to appear for a scheduled concrete pour and then never returned to the project. *Id.* As a result, Caldarera filed suit against Triumph and Triumph's insured, alleging that Triumph's actions constituted both breach of contract and negligence and seeking damages for same. *Id.*

The insurer moved for summary judgment, which the trial court granted. *Id.* at 367. On appeal, the court agreed that the insurer had "no contractual obligation to defend or indemnify Triumph against Caldarera's claims for damages stemming from the construction project." *Id.* The court emphasized that the allegations in the petition essentially set forth one factual claim: that Triumph "failed to fulfill its contractual obligations[.]" *Id.* at 369. For this reason, the court concluded that coverage was not triggered because a breach of contract is not an "accident" as that term is used in the definition of "occurrence" under the policy. *Id.*

Similarly in *Gilchrist Constr. Co., LLC v. Travelers Indem. Co.*, 416 F. Supp. 3d 619 (W.D. La. 2019), aff'd sub nom. *Gilchrist Constr. Co., L.L.C. v. Travelers Indem. Co.*, 811 F. App'x 262

9

(5th Cir. 2020), the Western District of Louisiana found that there was no duty to defend under the policy because there had been no "occurrence" as contemplated by the policy language. *Id.* at 629. There, the underlying complaint alleged that the insured failed to act in good faith and perform its duties under the parties' contract. *Id.* at 621–22. The court concluded that, because the underlying complaint contained factual allegations that the insured acted intentionally in violating the contract, that conduct could not be considered an accident—and thus an occurrence—under the policy. *Id.* at 628. When considering this case on appeal, the Fifth Circuit agreed with the district court's reasoning:

> The acts alleged in the underlying action here are intentional and not accidental. They are not the sort of unexpected incident the policies cover. Gilchrist's argument that the property owners did not expect or anticipate the property damage alleged in the underlying action because they expected the land to be left in a suitable condition, as the contract required, is unavailing. The fact that the parties expressly bargained for Gilchrist to "leave a clean, nicely shaped dirt pile to the [property owners'] satisfaction when all activities are complete" does not result in the violation of that contractual provision being unforeseeable or unexpected and therefore included in coverage.

*Gilchrist Constr. Co., L.L.C. v. Travelers Indem. Co.*, 811 F. App'x 262, 264 (5th Cir. 2020), reh'g denied (June 2, 2020) (citing *Longleaf Investments, L.L.C. v. Cypress Black Bayou Recreation & Water Conservation Dist.*, 49,508 (La. App. 2 Cir. 2/26/15), 162 So. 3d 479, 484 (concluding that insurer owed no duty to defend underlying action by landowner against insured alleging that insured intentionally breached contract with landowner because breach by insured was neither an accident nor an occurrence)); *see also Freeport-McMoRan Energy v. Mullen*, 233 F. App'x 341, 345–46 (5th Cir. 2007).

In the instant case, Axiall's claim against Plaintiff is for breach of contract and, based on the reasoning in the cases mentioned above, it is clear that the acts and omissions allegedly constituting a breach here are not the type of unexpected events contemplated by the policy. The

10

factual allegations indicate that Plaintiff "announced it would be leaving" without completing the work under the contract, "abandoned" the project before work was completed, and failed to pay Axiall the amount agreed to in the contract. (Axiall Reconventional Demand, Def. Ex. A, Doc. 9-3 at 10.) Plaintiff's actions here sound plainly in intentional breach of contract. Plaintiff's argument that a factual dispute exists because Plaintiff alleges that it did not abandon the project, but rather was "terminated" by Axiall, is to no avail. Under the eight corners analysis, the Court's factual universe is confined to the allegations made against the insured and the terms of the policy. Thus, this dispute is immaterial. Therefore, the Court finds that an "occurrence" within the meaning of the policy was not alleged here and, as a result, Plaintiff cannot defeat summary judgment on this point.

### *2. "Property Damage" Under the Policy*

The policy defines the term "property damage" as meaning either: (1) "physical injury to tangible property, including all resulting loss of use of that property," or (2) "loss of use of tangible property that is not physically injured." (AIIC Policy, Def. Ex. B, Doc. 9-4 at 30 (cleaned up).) Plaintiff maintains that the allegations by Axiall against Plaintiff satisfy both parts of this definition. Because Plaintiff advances arguments on each prong, they will be addressed in turn.

### a.  "Physical Injury" Constituting Property Damage

First, Plaintiff asserts that property damage was adequately alleged because Axiall alleged that Plaintiff caused "hazards" with respect to the property and left it in an "unsafe" condition, both of which Plaintiff argues are allegations of "physical damage" to the property satisfying the "physical injury" prong of the definition. (Doc. 15 at 12.)

In *Kent & Smith Holdings, L.L.C. v. HDI Glob. Ins. Co.*, 344 F. Supp. 3d 878 (M.D. La. 2018), the plaintiff-insured allegedly violated the terms of its contract with third parties (the

Lewises) by depositing "debris-laden dirt" on their land. *Id.* at 881. The Lewises then sought, inter alia, damages for lost profits and depreciated value, "alleging that [the plaintiff's] failure to remove the debris caused . . . a developer who had agreed to purchase the land . . . to terminate their purchase agreement with the Lewises." *Id.* This Court rejected the argument that these allegations set forth a "physical injury" under the policy, stating:

> The presence of the debris on the Lewises' land is certainly physical. But Plaintiff has not shown that there is any allegation of *injury* to the land itself. . . . It is true that the law does not require a formal recitation of the words "property damage," but that does not change the fact that the Lewis lawsuit fails to allege any physical harm beyond the temporary presence of the unwanted debris. In fact, Plaintiff points to no allegation in the Lewis Petition that specifically alleges a physical injury to their land.

*Id.* at 883.

Like in *Kent & Smith Holdings*, the allegations against Plaintiff here allege no physical injury to the property owned by Axiall. Like the debris in *Kent & Smith Holdings*, the "portions of the Methanol Plant" were left on Axiall's land, (Axiall Reconventional Demand, Def. Ex. A, Doc. 9-3 at 10); and, like the debris in *Kent & Smith Holdings*, the portions of the plant that remained—regardless of the hazards they posed—do not constitute physical injury to Axiall's property within the meaning of the policy.

### b.  "Loss of Use" Constituting Property Damage

Second, Plaintiff points out that the policy's definition of "property damage" also includes "loss of use" of property and argues that "Axiall has clearly made claims for loss of use[,]" (Doc. 15 at 13), because Axiall alleges damages for the "[v]alue of lost time by Axiall employees" (Axiall Reconventional Demand, Def. Ex. A, Doc. 9-3 at 11.) According to Defendant, Plaintiff's argument that Axiall alleged a "loss of use" of tangible property is mistaken, as the loss of use Axiall refers to concerns its employees' time, not any physical property. (Doc. 16 at 3–4.)

12

The Court finds Defendant's argument persuasive. Damages for the value of "lost time by Axiall employees to manage and address issues related to Plaintiff's abandonment" of the project are not damages for the loss of use of *property.* In *Lamar Advert. Co. v. Cont'l Cas. Co.*, 396 F.3d 654 (5th Cir. 2005), the Fifth Circuit addressed a similar argument concerning the same "loss of use" prong. There, the insured sought damages for "loss of future economic benefits" and argued its "employees should be considered as property for purposes of the insuring agreement." *Id.* at 660. The court held that "loss of profits that do not flow from injury to tangible property is not a loss covered by this policy's property damage provision." *Id.* at 663. The same reasoning applies here: economic loss alone—including the value of "lost time"—is not enough to constitute property damage under the policy. Therefore, the Court finds that neither the "occurrence" requirement nor the "property damage" requirement has been met based on the allegations in Axiall's Reconventional Demand.

Having found no coverage under the policy, the Court will not discuss the applicability of the policy exclusions relied on by Defendant to deny coverage.

### B. Duty to Indemnify

Unlike the duty to defend, "the duty to indemnify [generally] cannot be determined until the insured's liability has been resolved, because the duty to indemnify 'is triggered by the actual facts that establish liability in the underlying suit.' " *Endurance Am. Ins. Co.,* 2021 WL 4097142, at *7 (citing *Guar. Nat'l Ins. Co. v. Azrock Indus. Inc.*, 211 F.3d 239, 243 (5th Cir. 2000) (internal citations omitted)). "However, the 'duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend and the same reasons that negate the defense likewise negate any possibility the insurer will ever have a duty to indemnify.' " *Arch Ins.*, 2017 WL 8944048, at *5 (citing *Columbia Cas. Co. v. Georgia & Florida*

*RailNet, Inc.*, 542 F.3d 106, 111 (5th Cir. 2008)). Here, because there is no possibility of coverage triggering the duty to defend, the Court finds that there also can be no duty to indemnify Plaintiff in connection with the claims brought by Axiall.

In conclusion, there is no reasonable interpretation whereby the policy issued by Defendant to Plaintiff could provide coverage for the claims asserted by Axiall. Therefore, Defendant is entitled to summary judgment as a matter of law.

## IV.   Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion for Summary Judgment* (Doc. 9) filed by Defendant Associated Industries Insurance Company, Inc. is **GRANTED**.

Signed in Baton Rouge, Louisiana, on November 4, 2022.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**